UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSEPH O'QUINN,

        Plaintiff,

vs.

                                  Case No. 3:16-cv-1478-J-39PDB

LIEUTENANT SYKES et al.,

        Defendants.

_____

**ORDER**

## I. Status

Plaintiff is an inmate confined in the Florida penal system. He is proceeding pro se on an Amended Civil Rights Complaint (Amended Complaint) (Doc. 37) pursuant to 42 U.S.C. § 1983. He filed his original Complaint (Doc. 1) on June 30, 2016, pursuant to the mailbox rule. This cause is before the Court on Defendants' Motion to Dismiss [Anderson, Grimes, Ford, McNeil, Morris, and Sykes] (Motion One) (Doc. 42)[1] and Defendants' Motion to Dismiss [Mallard, Sikcier, and Swift] (Motion Two) (Doc. 56).[2] Plaintiff responded. <u>See</u> Order (Doc. 40); Plaintiff's Objection to the Defendants' Motion to Dismiss (Response One) (Doc. 49), Plaintiff's Objection to the Defendants' Motion to Dismiss

_____

[1] Defendants also filed a Notice (Doc. 62), with the grievance appeal and appeal log that were inadvertently not provided with Motion One and the Declaration of Lawanda Sanders.

[2] In this opinion, the Court references the document and page numbers designated by the electronic filing system.

(Response Two) (Doc. 61), and Plaintiff's Objection to the Defendants' Motion to Dismiss (Response Three) (Doc. 63).

## II. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

Defendants contend that Plaintiff failed to exhaust his administrative remedies prior to filing suit, and they ask that his Amended Complaint be dismissed with respect to all Defendants, except Defendant Sykes. Motion One at 2 and Motion Two at 2. Defendants also assert that Plaintiff has failed to state a claim of failure to protect, or any other claim, that is plausible on its face. Motion One at 7-10; Motion Two at 7-11. The Court will

first address the exhaustion matter, and then address the issue of whether Plaintiff failed to state a claim.

### III.  Exhaustion of Administrative Remedies

Defendants move to dismiss the Amended Complaint pursuant to 42 U.S.C. § 1997e(a) with respect to all of the Defendants, except Defendant Sykes.  Defendants assert that Plaintiff failed to properly avail himself of the grievance process with regard to his claims.  See the Declaration of Joy Proudman and the Declaration of Lawanda Sanders and attachments  (Docs. 42-1, 42-2, 62-1, and 62-2).

The Prison Litigation Reform Act (PLRA) requires exhaustion of available administrative remedies before a 42 U.S.C. § 1983 action with respect to prison conditions by a prisoner may be initiated in this Court.  Title 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."

In this instance, Defendants bear the burden of proving a failure to exhaust available administrative remedies.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), relying on Jones v. Bock, 549 U.S. 199 (2007).  Guidelines are provided for reviewing a prisoner civil rights action for exhaustion compliance:

> Before a prisoner may bring a
> prison-conditions suit under § 1983, the

> Prison Litigation Reform Act of 1995 requires
> that he exhaust all available administrative
> remedies. 42 U.S.C. § 1997e(a); see also Booth
> v. Churner, 532 U.S. 731, 736, 121 S.Ct. 1819,
> 1822, 149 L.Ed.2d 958 (2001). The purpose of
> the PLRA's exhaustion requirement is to
> "afford corrections officials time and
> opportunity to address complaints internally
> before allowing the initiation of a federal
> case." Woodford v. Ngo, 548 U.S. 81, 93, 126
> S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006)
> (quotation omitted). To properly exhaust, a
> prisoner must "[c]ompl[y] with prison
> grievance procedures." Jones v. Bock, 549 U.S.
> 199, 218, 127 S.Ct. 910, 922–23, 166 L.Ed.2d
> 798 (2007).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1208 (11th Cir. 2015).

A number of factors guide the Court. Initially, the Court recognizes that exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.), cert. denied, 555 U.S. 1074 (2008); Jones, 549 U.S. at 211; Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). The Supreme Court has stated that "failure to exhaust is an affirmative defense under the PLRA[.]" Jones, 549 U.S. at 216. Although, "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory under the PLRA[;]" therefore, "unexhausted claims cannot be brought." Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citation omitted).

As recognized by this Court,

> "The only limit to § 1997e(a)'s mandate is the
> one baked into its text: An inmate need
> exhaust only such administrative remedies as
> are 'available.'" 136 S. Ct. 1850, 1862
> (2016). For an administrative remedy to be
> available, the "remedy must be 'capable of use
> for the accomplishment of [its] purpose.'"
> Turner v. Burnside, 541 F.3d 1077, 1084 (11th
> Cir. 2008) (quoting Goebert v. Lee Cty., 510
> F.3d 1312, 1322–23 (11th Cir. 2007)).
>
> In Ross,[3] the Supreme Court identified
> three circumstances in which administrative
> remedies would be considered unavailable.
> First, "an administrative procedure is
> unavailable when (despite what regulations or
> guidance materials may promise) it operates
> as a simple dead end—with officers unable or
> consistently unwilling to provide any relief
> to aggrieved inmates." 136 S. Ct. at 1859.
> Second, "an administrative scheme might be so
> opaque that it becomes, practically speaking,
> incapable of use. In this situation, some
> mechanism exists to provide relief, but no
> ordinary prisoner can discern or navigate it."
> Id. Third, an administrative remedy is
> unavailable "when prison administrators thwart
> inmates from taking advantage of a grievance
> process through machination,
> misrepresentation, or intimidation." Id. at
> 1860.

Davis v. Sec'y, Dept. of Corr., No. 3:15-CV-649-J-34JRK, 2017 WL
1885366, at *3–4 (M.D. Fla. May 9, 2017).

In reviewing the question of exhaustion, "[t]he only facts
pertinent to determining whether a prisoner has satisfied the
PLRA's exhaustion requirement are those that existed when he filed
his original complaint. Smith v. Terry, 491 F. App'x 81, 83 (11th

---

[3] Ross v. Blake, 136 S.Ct. 1850 (2016).

Cir. 2012) (per curiam) (citing <u>Harris v. Garner</u>, 216 F.3d 970, 981 (11th Cir. 2000) (en banc)). Indeed, "[t]he time the [PLRA] sets for determining whether exhaustion of administrative remedies has occurred is *when the legal action is brought*, because it is then that the exhaustion bar is to be applied." <u>Wheeler v. Davis</u>, No. 5:14CV271/WS/CJK, 2017 WL 1029119, at *3 (N.D. Fla. Feb. 6, 2017) (report and recommendation) (quoting <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1324 (11th Cir. 2007)) (emphasis in <u>Wheeler</u>), <u>report and recommendation adopted by</u> No. 5:14CV271-WS/CJK, 2017 WL 1027035 (N.D. Fla. Mar. 16, 2017).

Thus, the relevant question before this Court is whether Plaintiff properly exhausted available administrative remedies as of June 30, 2016. The question of availability of the procedure goes to whether the administrative procedure was available before June 30, 2016, prior to the filing of the initial complaint. To construe the exhaustion requirement otherwise would render the PLRA "a toothless scheme." <u>Woodford</u>, 548 U.S. at 95.

Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." <u>Woodford</u>, 548 U.S at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. **Administrative law does this by requiring proper exhaustion of**

6

> **administrative remedies, which "means using
> all steps that the agency holds out, and doing
> so properly (so that the agency addresses the
> issues on the merits)."** <u>Pozo</u>,[4] 286 F.3d, at
> 1024. . . .

<u>Id</u>. at 90 (emphasis added).  In fact, "[p]roper exhaustion demands
compliance with an agency's deadlines and other critical procedural
rules."  <u>Id</u>.

There are no disputed issues of fact as to whether
administrative remedies were available to Plaintiff and whether he
exhausted all available administrative remedies with respect to
Defendant Sykes.  Plaintiff's Exhibit A (Doc. 51-1).  Plaintiff
properly exhausted his administrative remedies with regard to
Defendant Sykes as he grieved the matter and his grievance was
approved.

The Court must now make findings on the disputed issues of
fact to decide whether administrative remedies were available to
Plaintiff, and if so, whether he properly exhausted his
administrative remedies with regard to the remaining Defendants.[5]

The Florida Department of Corrections (FDOC) provides an

---

[4] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir.), <u>cert</u>. <u>denied</u>,
537 U.S. 949 (2002).

[5] Since the parties have not requested an evidentiary hearing
on this issue and they have submitted evidence for the Court's
consideration, the Court proceeds to resolve the material questions
of fact based on the documents before the Court.  <u>Bryant</u>, 530 F.3d
1377 n.16 (recognizing that a district court may resolve material
questions of fact on the submitted papers when addressing the
PLRA's exhaustion of remedies requirement).

internal grievance procedure. <u>See</u> Chapter 33-103, Florida

Administrative Code (F.A.C.). Thus, to determine whether Plaintiff

exhausted his administrative remedies, this Court must examine the

relevant documents to determine whether the incidents in question

were grieved. If these incidents were grieved and the documents

complied with the deadlines and other procedural rules as set forth

in the F.A.C., the issues raised therein are exhausted.

Generally, the FDOC provides a three-step grievance procedure.

> In Florida, the grievance process
> consists of a three-step procedure. An inmate
> must first file an "informal grievance ... to
> the staff member who is responsible in the
> particular area of the problem." Fla. Admin.
> Code Ann. § 33-103.005(1). The second step
> requires the inmate file a formal grievance
> with the warden. <u>Id</u>. § 33-103.006(1)(a). If
> the inmate is unsuccessful at this point, he
> may submit an appeal to the Secretary of the
> DOC. <u>Id</u>. § 33-103.007.

<u>Kozuh v. Nichols</u>, 185 F. App'x 874, 877 (11th Cir. 2006) (per

curiam), <u>cert</u>. <u>denied</u>, 549 U.S. 1222 (2007).

Of initial significance, if Plaintiff filed a grievance and

attempted to exhaust his administrative remedies, he would have

needed to submit an initial grievance with the appropriate staff,

a formal grievance with the warden, and then an appeal to the

Secretary to properly grieve the matter in compliance with the

procedural requirements of the administrative grievance process.

Plaintiff filed an "Emergency Grievance" with the Secretary of

the FDOC, but it was returned without action as being in non-

compliance with the Rules.  Plaintiff's Exhibits E & F (Doc. 51-4 & 51-5); (Doc. 62-1).  By definition, an emergency grievance is "[a] grievance of those matters which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate." F.A.C. § 33-103-002(4).  An inmate may proceed directly to this step if he is submitting an emergency grievance and he (1) states at the beginning of Part A of Form DC1-303 that the grievance concerns an emergency; and (2) clearly states "the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility[.]" Id. § 33-103.007(6)(a)(1)-(2).

In this instance, the reviewer found no valid reason within the grievance for by-passing the lower levels and determined the grievance to be in non-compliance with the rules.[6]  Id. § 33-103.014(1)(f) ("[t]he inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable.").  Thus, the grievance was returned without action.

---

[6] Unlike the inmate in Dimanche v. Brown, 783 F.3d 1204, 1212-13 (11th Cir. 2015), Plaintiff did not clearly state his reason for by-passing the required routine steps for exhausting his administrative remedies.

Plaintiff filed a grievance with the Warden, but it too was returned without processing for non-compliance with the Rules. Plaintiff's Exhibit H (Docs. (51-7, 51-8). The grievance was found not to have the appropriate attachment or sound reasons not to have them pursuant to F.A.C. § 33-103-014(1)(g). The responder provided Plaintiff with additional information, notifying him that his appeal had been responded to on September 30, 2015, and informing him that he could send an inmate request to his classification officer and could refile the grievance in compliance with the rules. Response (Doc. 51-8).

Finally, Plaintiff filed a December 4, 2015 grievance with the Warden seeking a good adjustment transfer and/or a transfer out of the region, and sought to press criminal charges against two inmates. Plaintiff's Exhibit J (Doc. 51-9). See also Plaintiff's Exhibit G (Doc. 51-6), Request for Administrative Remedy or Appeal addressed to the Secretary and described as refiled December 4, 2015. This grievance was also returned without processing for failure to comply with the Rules. Plaintiff's Ex. K (Doc. 51-9). It was returned without processing because it was deemed that he was "using the grievance process to ask questions or seek information, guidance or assistance." Plaintiff's Exhibit K (Doc. 51-9). See F.A.C. § 33-103.014(1)(v). Plaintiff was advised that he could obtain the information requested by contacting his

classification officer using an Inmate Request form. Response (Doc. 51-9).

Given these facts, even assuming the grievances constituted attempts to exhaust administrative remedies with regard to the August 27, 2015 incident at Hamilton Correctional Institution (HCI), Plaintiff failed to comply with critical procedural rules to exhaust his available administrative remedies. As such, there was not proper exhaustion.

Plaintiff has not demonstrated that he has exhausted his administrative remedies with respect to his claims against Defendants Anderson, Grimes, Ford, McNeil, Morris, Mallard, Sikcier, and Swift. Indeed, upon review, the documents before the Court demonstrate otherwise. Plaintiff never properly grieved his claims and the institutional records demonstrate that Plaintiff never properly and completely grieved his claims by complying with the critical procedural rules.

Upon review, the Court finds that the administrative process was available to Plaintiff;[7] it did not operate as a simple dead end, it was clearly capable of use, and prison administrators did not thwart the use of the process through machination, misrepresentation, or intimidation. Based on all reasonable inferences, Plaintiff had access to the grievance process and

---

[7] This is evidenced by Plaintiff's use of the grievance process to file an informal grievance against Defendant Sykes that was approved and resulted in an internal investigation.

submitted documents for review, although not in compliance with the Rules. Indeed, Plaintiff's grievances and grievance appeals were specifically rejected for non-compliance with the administrative rules. Plaintiff has not shown that he properly filed a grievance against these Defendants concerning the events that occurred at HCI and fully exhausted his administrative remedies in compliance with the procedural rules prior to bringing his civil rights action.

An inmate plaintiff is required to exhaust available administrative remedies. 42 U.S.C. § 1997e(a). Plaintiff has not provided the Court with copies of any grievances or grievance responses or other information demonstrating proper exhaustion of administrative remedies, using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits. The record evidence shows that Plaintiff did not properly exhaust his administrative remedies with regard to his claims concerning the events at HCI on August 27, 2015.

In light of the above, Plaintiff failed to exhaust his administrative remedies before filing a lawsuit to seek judicial redress. Therefore, the Court concludes that Motion One and Motion Two should be granted for Plaintiff's failure to exhaust his administrative remedies against Defendants Anderson, Grimes, Ford, McNeil, Morris, Mallard, Sikcier, and Swift. Simply put, exhaustion of available administrative remedies is required before a 42 U.S.C. § 1983 action with respect to prison conditions by a

prisoner may be initiated in this Court, and Plaintiff failed to properly avail himself of this process.

## IV. Defendants Anderson and Mallard

In his Preliminary Statement of the Amended Complaint, Plaintiff generally claims that the Defendants were deliberately indifferent to his safety in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Amended Complaint at 6. With regard to Plaintiff's claim of deliberate indifference,

> "A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the [Fourteenth] Amendment." Marsh[v. Butler Cnt'y], 268 F.3d [1014] at 1028 [11th Cir. 2001]. A Fourteenth Amendment violation occurs when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk. Id. Furthermore, such risk must be an objectively substantial risk of serious harm to prisoners, and the prison official must respond to that risk in an objectively unreasonable manner. Farmer v. Brennan, 511 U.S. 825, 834 844-845, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) Finally, a plaintiff must show that the constitutional violation caused the injury. Marsh, 268 F.3d at 1028.

Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003).

Plaintiff describes Defendant Warden Anderson as being the head warden at HCI and responsible for the actions of his lower ranking officers. Amended Complaint at 6. Defendant Assistant Warden Mallard is "next in line in the chain of command" and "responsible for the training[.]" Id. Plaintiff asserts that

Defendants Anderson and Mallard were "in charge of the training of the lower ranking officers." <u>Id</u>. at 7. Plaintiff contends it was Anderson and Mallard's duty to train the officers to use the F.A.C. and to comply with the rules of conduct. <u>Id</u>. In the statement of facts, Plaintiff presents no factual allegations in support of his claims against Defendants Anderson and Mallard. <u>Id</u>. at 7-9.

In response, Defendants Anderson and Mallard submit that they should be dismissed from this action because supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Motion One at 7; Motion Two at 7. The Eleventh Circuit provides guidance for employing the rigorous standard for establishing supervisory liability in a civil rights action:

> "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988) (per curiam). Personal participation occurs when, for example, the supervisor inflicts the injury himself. <u>See</u> <u>Hewett v. Jarrard</u>, 786 F.2d 1080, 1087 (11th Cir. 1986). A causal connection can be established "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1158 (11th Cir. 2005) (quotation omitted). This standard is quite rigorous. <u>Id</u>.

<u>Smith v. LePage</u>, 834 F.3d 1285, 1298 (11th Cir. 2016).

Acknowledging this strict limitation on supervisory liability, the Court recognizes that Defendants Anderson and Mallard may not be held liable under a theory of respondeat superior. <u>See</u> <u>Braddy v. Fla. Dep't of Labor & Emp't Sec.</u>, 133 F.3d 797, 801 (11th Cir. 1998) (finding supervisory liability requires something more than stating a claim of liability under a theory of respondeat superior). There is no suggestion that Defendants Anderson and Mallard personally participated in the alleged violation. Plaintiff submits, however, that there is a causal connection between the Defendants' actions or inactions and the alleged federal constitutional deprivation. The question is whether Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570.

In reviewing this claim, the Court recognizes that a warden, "the person charged with directing the governance, discipline, and policy of the prison and enforcing its orders, rules, and regulations" bears the responsibility of taking appropriate measures to improve prisoner safety, particularly if his failure to do so would create a climate that preordained the use of excessive force and abhorrent acts. <u>Mathews v. Crosby</u>, 480 F.3d 1265, 1275 (11th Cir. 2007), <u>cert</u>. <u>denied</u>, 552 U.S. 1095 (2008). Here, Plaintiff contends that Defendants Anderson and Mallard failed to train correctional officers; "[a] failure to train amounts to deliberate indifference when 'the need for more or different

15

training is obvious, such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right.'" Cooper v. City of Starke, Fla., NO. 3:10-cv-280-J-34MCR, 2011 WL 1100142, at *5 (M.D. Fla. Mar. 23, 2011) (not reported in F.Supp.2d) (quoting Belcher v. City of Foley, Ala., 30 F.3d 1390, 1397-98 (11th Cir. 1994)).

Plaintiff's Amended Complaint is void of any factual allegations against Defendants Anderson and Mallard. Plaintiff has not asserted that there is a history of officers failing to comply with the code of conduct in the prisons. Plaintiff does not contend that the need for training was obvious due to other glaring factors. On the contrary, he contends that the officers were "not properly trained, or just simply chose not to obey the rules." Amended Complaint at 10.

Plaintiff has not adequately alleged that Wardens Anderson and Mallard were put on notice of the need for corrective measures and training to avoid violations of constitutional rights. Furthermore, a warden may rely on the common sense of corrections officers. Johnson v. Singer, 3:10-CV-871-J-JRK, 2013 WL 12097617, at *9 (M.D. Fla. Mar. 24, 2013), aff'd sub nom. Johnson v. Rosier, 578 F. App'x 928 (11th Cir. 2014). Also, it is important to note that:

> any claim of negligent training and
> supervision is insufficient to state a claim
> of federal constitutional dimension. <u>See
> Harris v. Coweta Cnty.</u>, 21 F.3d 388, 393 (11th
> Cir. 1994) (noting that "[a]ccidents,
> mistakes, negligence, and medical malpractice
> are not 'constitutional violation [s] merely
> because the victim is a prisoner'") (quoting
> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976));
> <u>see also Rooney v. Watson</u>, 101 F.3d 1378,
> 1380-81 (11th Cir. 1996) (stating that the
> alleged negligence does not transform a state
> tort claim into a constitutional deprivation),
> <u>cert</u>. <u>denied</u>, 522 U.S. 966 (1997); <u>Cannon v.
> Taylor</u>, 782 F.2d 947, 950 (11th Cir. 1986)
> (holding that negligence actions are
> actionable under state law, but do not rise to
> the level of a constitutional deprivation).

<u>Johnson v. Singer</u>, 2013 WL 12097617, at *9.

In this case, the supervisory claims against Defendants Warden Anderson and Assistant Warden Mallard fail because there is an absence of any factual allegations suggesting that Anderson and Mallard personally participated in the claimed constitutional violation. Further, the record discloses no facts suggesting any causal connection between their actions or inactions and the alleged federal constitutional deprivation. Upon due consideration, Plaintiff has not alleged something more than respondeat superior against Defendants Anderson and Mallard. <u>Reid v. Sec'y, Fla. Dep't of Corr.</u>, 486 F. App'x 848, 852 (11th Cir. 2012) (noting that supervisory liability may be based on personal participation or a causal connection between supervisory actions and the deprivation).

Based upon a careful review of the Amended Complaint, there is no facial plausibility as to Plaintiff's claims against Defendants Anderson and Mallard.  Plaintiff has failed to state claims of deliberate indifference against them.  Indeed, Plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570.  Therefore, Defendant Anderson's and Defendant Mallard's Motions to Dismiss are due to be granted.

## V.  Defendant Sikcier

Plaintiff names corrections officer Sikcier as a Defendant. Amended Complaint at 6.  Plaintiff states that Lieutenant Sykes, the housing officer, was in charge of inmates' housing and Defendant Sikcier.  <u>Id</u>. at 7.  The only allegation in the statement of facts against Defendant Sikcier is that he "did not pass the paperwork to Lt. Sykes, or did not.  I'm not sure where the request[s] went after plaintiff put them in the request box."  <u>Id</u>. at 9.  Plaintiff explains that in July and August of 2015, he submitted three requests to Defendant Sykes concerning the altercations between Plaintiff and inmate Diaz, and requesting to be separated from Diaz, but Defendant Sykes failed to respond to these requests, leaving Plaintiff in harm's way.  <u>Id</u>.

As noted by Defendants, Plaintiff is apparently asserting that although Sikcier was in charge of picking up grievances or requests from a box, he failed to provide the requests to Defendant Sykes.

Motion Two at 10.   Defendants also point out that Plaintiff acknowledges that he does not know what happened to the requests once they were put in a box.   <u>Id</u>.

This claim against Defendant Sikcier fails because Plaintiff's statement of facts fails to allege any facts suggesting that Defendant Sikcier personally participated in the alleged constitutional deprivation.   Indeed, Plaintiff admits that he does not know what happened to the requests once they were placed in the box.   Plaintiff just knows that he did not receive any responses from Defendant Sykes.

Based upon a careful review of the Amended Complaint, there is no facial plausibility as to an Eighth and/or Fourteenth Amendment claim against Defendant Sikcier.   Plaintiff has not alleged that Sikcier had subjective knowledge of a substantial risk of harm or that he ignored such a risk.   At most, Plaintiff has alleged a negligent failure to process requests, a non-constitutional claim of negligent deprivation.   In this case, Plaintiff has failed to state a claim of constitutional dimension against Defendant Sikcier.   Indeed, Plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570.   Therefore, Defendant Sikcier's Motion to Dismiss is due to be granted.

## VI. Failure to Protect

The Court has already determined that Defendants Anderson, Mallard and Sikcier's motions to dismiss are entitled to being granted. Thus, the Court will address whether Plaintiff has failed to state a claim for failure to protect against Defendants Grimes, Ford, McNeil, Morris, Sykes, and Swift. Defendants contend that Plaintiff has failed to state a claim for failure to protect and the Amended Complaint should be dismissed.

Plaintiff complains that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to take reasonable steps to protect him from known dangers on the wings of the institution, and as a result of their deliberate indifference to his safety needs, inmate Diaz's associate assaulted Plaintiff on wing three. An official must know of and disregard an excessive risk to an inmate's health or safety, the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must draw that inference. Farmer v. Brennan, 511 U.S. 825, 1979 (1994). The Eleventh Circuit, however, "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriquez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). In fact, more than conclusory and vague

allegations are required to state a cause of action under 42 U.S.C. § 1983.  See L.S.T., Inc., v. Crow, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam); Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984).  In the absence of a federal constitutional deprivation or violation of a federal right, Plaintiff cannot sustain a cause of action against the Defendants under 42 U.S.C. § 1983.

The Eleventh Circuit set forth requirements for an Eighth Amendment violation:

> The Eighth Amendment "imposes a duty on prison officials" to "take reasonable measures to guarantee the safety of the inmates." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099-100 (11th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (quotation marks omitted and alterations adopted)). In particular, under the Eighth Amendment, "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833, 114 S.Ct. at 1976 (quotation marks omitted and alterations adopted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834, 114 S.Ct. at 1977.

> A prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (quotation marks omitted and alterations adopted) (emphasis added). . . .

> "The second element - that [a prison official] evidenced a deliberate indifference to a serious risk that [a prisoner] would be

21

injured - forms the crux of the matter at hand." Id. The prison official must "actually (subjectively) know[ ] that an inmate is facing a substantial risk of serious harm, yet disregard[ ] that known risk by failing to respond to it in an (objectively) reasonable manner." Rodriquez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007). With regard to the subjective component of the defendant's actual knowledge, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979.

Moreover, this must be shown by "conduct that is more than gross negligence." Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010). "[T]he deliberate indifference standard - and the subjective awareness required by it - is far more onerous than normal tort-based standards of conduct sounding in negligence: 'Merely negligent failure to protect an inmate from attack does not justify liability under [§] 1983.'" Goodman,[8] 718 F.3d at 1332 (quoting Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990)).

Losey v. Thompson, 596 F. App'x 783, 788-89 (11th Cir. 2015).

In the statement of facts, Plaintiff alleges that during the evening of August 27, 2015, Defendant Grimes was passing out mail. Amended Complaint at 7. Plaintiff was in a cell with inmate Diaz. Id. Plaintiff advised Defendant Grimes that Diaz had threatened Plaintiff's life. Id. Defendant Grimes responded to this information by radioing for help, ordering the cell door rolled (opened), placing Diaz in handcuffs, and calling officer Morris for

---

[8] Goodman v. Kimbrough, 718 F.3d 1325 (11th Cir. 2013).

assistance. Id. Defendants Ford, Swift and McNeil came to render assistance. Id. at 8. Plaintiff told them that Diaz had threatened his life, and Plaintiff requested protective housing. Id. Defendants Ford, Swift and McNeil decided to uncuff Diaz and send him back into the cell. Id. Plaintiff decided to hit Diaz, expecting to be placed in confinement for this deed. Id. When this occurred, Defendant Grimes broke his seal on his chemical agent, but Defendants Ford, Swift and McNeil told Grimes not to eject the spray. Id.

Thereafter, Plaintiff was handcuffed. Id. Defendants Ford, Swift and McNeil made the decision to remove the handcuffs and place Plaintiff on wing three, located in the same building at HCI. Id. At this point, Plaintiff told Defendant Ford that Diaz had threatened him, and Plaintiff wanted to be placed in confinement. Id. Plaintiff explained to Defendant Ford that Diaz was "a head gang member," and moving Plaintiff to wing three was not going resolve the problem or protect Plaintiff from danger. Id. At this juncture, Plaintiff asked Defendant Ford if he could be placed in confinement, but Plaintiff's request was declined. Id.

On August 27, 2015, Plaintiff moved to wing three. Id. at 9. On the morning of August 28, 2015, when the doors were rolled, Plaintiff went to get coffee and saw inmate Diaz on the window "giving sign language" to inmate Tobler. Id. Tobler went back to his cell, and then returned to Plaintiff's cell and attacked

Plaintiff with a lock and a razor blade.  <u>Id</u>.  Plaintiff received medical care at the medical department.  <u>Id</u>.

Plaintiff alleges that in months of July and August, 2015, he wrote three requests to Defendant Sykes to apprise him of the altercations between Plaintiff and inmate Diaz and to request separation.  <u>Id</u>.  Defendant Sykes did not respond to the requests.  <u>Id</u>.  Plaintiff states that Defendant Sikcier failed to pass on the paperwork to Defendant Sykes, although Plaintiff also states that he does not know what happened to the requests after placement into the request box.  <u>Id</u>.

The Court will first address Plaintiff's allegations against Defendant Grimes.  Plaintiff describes Defendant Grimes as a floor officer, working under the supervision of Defendant McNeil.  Amended Complaint at 7.  Based on the allegations set forth in the Amended Complaint against Defendant Grimes, he took every reasonable step to protect Plaintiff from known dangers on the wing.  As soon as Plaintiff told Grimes that inmate Diaz had threatened him, Grimes took all reasonable precautions to ensure Plaintiff's safety.  He immediately radioed for help, ordered the cell door to be rolled open, handcuffed Diaz, and called for assistance.  Indeed, once Plaintiff alerted Defendant Grimes to the danger from inmate Diaz, Defendant Grimes immediately reacted to the information and took appropriate measures to protect Plaintiff and obtain aid from his superiors and co-workers.  Plaintiff has

not pled enough facts to state a claim to relief that is plausible on its face against Defendant Grimes. Therefore, Defendant Grimes' Motion to Dismiss is due to be granted.

Next, the Court will address the allegations against Defendants Ford, Swift and McNeil. Plaintiff describes Defendant Ford as the acting duty warden for security at HCI, Defendant Swift as the head sergeant, and Defendant McNeil as the security sergeant in G dormitory. Amended Complaint at 7. When Defendant Grimes radioed for assistance, Defendants Ford, Swift and McNeil promptly responded. Id. at 8. When Plaintiff asked for protective housing, these Defendants made the decision to un-cuff Diaz and send him back to the cell. Id. In hopes of being sent to confinement, Plaintiff states he hit Diaz. Id. Defendants Ford, Swift and McNeil told Defendant Grimes not to spray Plaintiff with chemical spray. Id. Although Plaintiff was briefly placed in handcuffs, Defendants Ford, Swift and McNeil ordered the handcuffs to be removed, and they transferred Plaintiff to wing three in the same building. Id.

Plaintiff alleges that he told Defendant Ford that Diaz had threatened him and Plaintiff desired to be placed in confinement. Id. Plaintiff further advised Defendant Ford that Diaz was a head gang member, and Plaintiff would not be safe in wing three. Id. Plaintiff asked to be placed in confinement, but his request was denied. Id.

Upon review, based on Plaintiff's allegations as stated in the Amended Complaint, Defendants Ford, Swift and McNeil made a measured and tempered  response to the volatile situation on the wing.  They responded promptly to Grimes' request for assistance. Grimes had handcuffed Diaz and removed him from the cell. Plaintiff was also outside of the cell.  Defendants Ford, Swift and McNeil decided to return Diaz to the cell.  At that point, Plaintiff became the aggressor and hit inmate Diaz.  Again, the Defendants took a measured response by handcuffing Plaintiff, but not directing that he be chemically sprayed.  Instead, the Defendants decided to protect Plaintiff by moving him to a different wing from inmate Diaz.  Defendants Ford, Swift and McNeil took reasonable steps to protect Plaintiff from a known danger on the wing of the institution (Plaintiff's cell mate inmate Diaz) by removing Plaintiff from the cell and the wing.  Thus, Defendant's Motions to Dismiss are due to be granted in this regard.

It is evident, however, that Plaintiff's complaint has alleged facts that, if true, are sufficient to establish a substantial risk of inmate-on-inmate violence with respect to Plaintiff's claim that he told Defendant Ford that Diaz was a head gang member and Plaintiff would not be safe on wing three of the same building.  Of note, wing three was not a confinement wing, and the doors were rolled open on that wing the following day.  It is significant that Plaintiff alleges in his Amended Complaint that he saw Diaz

26

conferring with Tobler through a window prior to the attack, and Tobler returned from his cell five minutes later and attacked Plaintiff with a lock and a razor blade. Thus, the allegations show that the inmates were not completely segregated, as Plaintiff could see Diaz and Tobler; the doors of the cells were not locked during the day; and weapons or weapon-like items were readily available on the wing.

Plaintiff also alleges that Defendant Ford disregarded a known risk by failing to respond to it in an objectively reasonable manner. Plaintiff alleges that he told Defendant Ford that Diaz was a head gang member, that he threatened Plaintiff's life, and Plaintiff would not be safe in the same building with inmate Diaz.[9] Plaintiff also requested to be placed in confinement. Therefore, Plaintiff has adequately alleged that Defendant Ford was aware that Plaintiff faced a substantial risk of harm by being housed in the same building with Defendant Diaz and his cohorts:

> This determination is consistent with a recent Eleventh Circuit decision, holding that a prisoner had sufficiently presented a jury question as to defendants' subjective knowledge of a risk of harm based on evidence that the prisoner verbally informed an assistant warden "on at least two occasions that his life had been threatened by members of his former gang and that, to avoid injury, he needed either to be transferred to another

---

[9] It is insignificant that Plaintiff did not name a specific prisoner, Tobler, who eventually committed the battery. It is enough that Plaintiff has pled that Defendant Ford was subjectively aware of Plaintiff's risk from Diaz and his cohorts.

prison or to be placed in protective custody;"
and informed the warden, by means of a written
form, "that he feared for his safety in the
compound and requested a transfer." <u>Rodriquez
v. Sec'y for Dep't of Corr.</u>, 508 F.3d 611, 618
(11th Cir.2007).

<u>Ogles v. Trimble</u>, No. 5:15-CV-00054 (MTT), 2016 WL 491848, at *4 (M.D. Ga. Jan. 5, 2016) (not reported in F.Supp.2d), <u>report and recommendation adopted by</u> 2016 WL 498255 (M.D. Ga. Feb. 8, 2016).

The duty under the Eighth Amendment is reasonable safety. Plaintiff has alleged enough facts to state a claim to relief that is plausible on its face. Plaintiff's Amended Complaint has set forth sufficient factual matter to support the conclusion that the alleged conditions at HCI posed a substantial risk of serious harm to Plaintiff and could bear out an Eighth Amendment violation against Defendant Ford for failure to respond reasonably to the alleged risk.[10]

Plaintiff names Lieutenant Sykes, the housing officer in charge of housing inmates, as a Defendant. Amended Complaint at 7. Plaintiff asserts that Defendant Sykes failed to execute his position as housing officer by leaving Plaintiff in harms way. <u>Id</u>. at 9. Plaintiff states that in the months of July and August of 2015, he wrote three requests to Defendant Sykes apprising him of

---

[10] It is important to note that Plaintiff failed to properly exhaust his administrative remedies against Defendant Ford. Thus, the failure to protect claim raised against Defendant Ford is due to be dismissed without prejudice for failure to exhaust administrative remedies.

the altercations between Plaintiff and inmate Diaz and requesting separation before the problem worsened. Id. Plaintiff alleges that Defendant Sykes failed to respond and left Plaintiff in harms way. Id. Given Plaintiff's specific factual assertions (that, prior to August 27, 2015, Plaintiff alerted the Defendant that he was in danger and that Defendant Sykes was informed of the altercations between Plaintiff and inmate Diaz, and that Plaintiff feared for his life when the Defendant failed to move either Diaz or Plaintiff), he has pled "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Therefore, Defendant Sykes' Motion to Dismiss as to Plaintiff's Eighth Amendment failure to protect claim is due to be denied, and the parties will be given an opportunity to further develop the facts.

Therefore, it is now

**ORDERED:**

1. Defendants Anderson, Grimes, Ford, McNeil, Morris, Mallard, Sikcier, and Swift's Motions to Dismiss [for failure to exhaust administrative remedies] (Docs. 42 & 56) are **GRANTED** with respect to the request to dismiss the action pursuant to 42 U.S.C. § 1997e(a).

2. Defendants Anderson, Grimes, McNeil, Morris, Mallard, Sikcier, and Swift's Motions to Dismiss [for failure to state a claim] (Docs. 42 & 56) are **GRANTED.**

3.    Defendants Anderson, Grimes, Ford, McNeil, Morris, Mallard, Sikcier, and Swift are dismissed from this action.

4.    Defendant **Sykes** shall respond to the Amended Complaint by **September 25, 2017.**

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of September, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sa 8/24
c:
Joseph O'Quinn
Counsel of Record